

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ADP, LLC,
        Plaintiff,

-vs-                                                                 Case No. A-15-CA-714-SS

JUAN C. CAPOTE,
        Defendant.

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically the Letter Briefs [##63, 64] filed by the parties pursuant to the Court's Order of June 1, 2016 [#60]. Having reviewed the letter briefs and the relevant governing law, the Court now enters the following orders.

**Background**

Plaintiff ADP, LLC, a business outsourcing and software services company, employed Defendant Juan C. Capote from June 2007 through October 2014. In March 2013 and September 2014, Capote allegedly accepted stock awards offered to certain ADP employees. ADP alleges that as "part of the consideration for" the stock awards, Capote was required to and did "accept[] the terms of" two restrictive covenant agreements (the RCAs) which, among other restrictions, prohibited Capote from (1) working for any ADP competitor during the 12 months following his separation from ADP (the non-compete covenants), (2) soliciting any actual or prospective ADP clients during the non-competition period (the non-solicitation covenants), and (3) disclosing ADP's confidential information (the non-disclosure covenants). *See* First Am. Compl. [#66] ¶¶ 19–22,

27–29. Both of the RCAs contain choice-of-law provisions indicating they are governed by New Jersey law. *See id.* [#66-2] Ex. B (First RCA) ¶ 9 ("This Agreement shall be governed by, and construed in accordance with, the laws of the State of New Jersey."); *id.* [#66-3] Ex. C (Second RCA) ¶ 9 ("The interpretation, validity, and enforcement of this Agreement will be governed by the laws of the State of New Jersey[.]").

Capote resigned from his position with ADP in October 2014 and accepted a position with The Ultimate Software Group, Inc., an ADP competitor in the Austin, Texas area, precipitating this action. On January 25, 2015, ADP filed suit against Capote in the Superior Court of New Jersey, Chancery Division, asserting breach of contract, breach of fiduciary duty, and unfair competition claims. *See* Notice Removal [#1-1] Ex. A (Orig. Compl.). Capote removed the suit to the United States District Court for the District of New Jersey on February 20, 2015. *See id.* [#1-1] Ex. B.

On March 5, 2015, Capote filed a Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Change Venue, seeking transfer to a federal district court located in Texas. The New Jersey District Court declined to decide the personal jurisdiction question, but analyzed and granted Capote's request for a transfer of venue on July 28, 2015. *See* D.N.J. Order of July 28, 2015 [#14]. The case was transferred to this Court on August 14, 2015.

Following discovery-related motions practice, ADP filed its amended complaint on June 29, 2016. *See* First Am. Compl. [#66]. The amended complaint brings the following claims: (1) breach of Capote's employment contract; (2) breach of the First RCA; (3) breach of the Second RCA; (4) misappropriation of trade secrets in violation of the Texas Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE §§ 134.001 *et seq.*; (5) breach of duty of loyalty; and (6) unfair competition. *See id.* ¶¶ 60–111. ADP seeks an injunction enjoining Capote from working for any ADP competitor within

Texas[1] or soliciting any ADP client or employee for 12 months "from the date of this Court's Order," violating any of the terms of his employment contract or the RCAs, disclosing ADP's confidential information, interfering with ADP's business relationships, or breaching any fiduciary obligation to ADP, among other relief. *See id.* at Request for Relief ¶¶ A–D. ADP also seeks money damages. *Id.* ¶ E.

Capote filed his amended counterclaim on June 30, 2016, seeking a declaratory judgment that the restrictive covenants at issue are unenforceable, that "the enforcement sought by ADP is greater than that provided within the agreements," or alternatively, reformation of the covenants. *See* Am. Countercl. [#67] at 7.

I.   **Choice of Law**

Following hearing on June 1, 2016, the Court ordered the parties to submit letter briefs setting forth their positions on which state's law should apply to ADP's breach-of-contract claims involving the RCAs.[2] ADP argues New Jersey law applies, as agreed in the RCAs, while Capote contends Texas law applies, despite the RCAs' choice-of-law provisions. As set forth below, the Court finds New Jersey law applies to the claims concerning the RCAs' non-disclosure covenants, but Texas law governs the claims concerning the RCAs' non-compete and non-solicitation covenants.

---

[1] With the exception of Houston. First Am. Compl. at Request for Relief ¶ A. ADP also seeks to enjoin Capote from working for any ADP competitor in the State of Oklahoma and St. Louis, Missouri. *Id.*

[2] At the time of hearing, ADP had not yet filed its First Amended Complaint. The First Amended Complaint adds allegations concerning the Second RCA. *Compare* Orig. Compl. ¶¶ 19–22 *with* First Am. Compl. ¶¶ 19–22, 27–29. Although as of the hearing date, only the First RCA was at issue, the Court here refers to "the RCAs" to avoid confusion, as the choice-of-law issue and analysis are identical for both.

Because this is a diversity case, Texas law governs the choice-of-law analysis. *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004) ("District courts sitting in diversity apply the choice-of-law rules of the forum state."). "[A]lthough Texas courts permit choice-of-law agreements and the default position is that they are enforceable, it is not uncommon for a party to overcome them." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 582 (5th Cir. 2015) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990)). A claimant seeking to avoid a choice-of-law provision must satisfy Section 187(2) of the Restatement, which provides:

> (2)     The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>
> (a)     the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b)     application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*DeSantis*, 793 S.W.2d at 678 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (hereafter RESTATEMENT)).

Here, subsection (a) does not apply, as New Jersey has a substantial relationship to the parties: New Jersey is ADP's principal place of business. *See* RESTATEMENT § 187 cmt. f (explaining the state of the chosen law has a substantial relationship to the parties or the contract when the state is "where one of the parties is domiciled or has his principal place of business"); *St. Paul Fire & Marine Ins. Co. v. Bd. of Comm'rs*, 418 F. App'x 305, 309 (5th Cir. 2011) ("New York has a substantial relationship to the parties because [the] plaintiff . . . is a New York corporation."); *Wallace v. Chase Bank USA, N.A.*, 51 F. Supp. 3d 673, 678 (N.D. Miss. 2014) ("Delaware has a

'substantial relationship' to the parties because it is where Chase's principal place of business is located."). The Court therefore turns to subsection (b). For subsection (b) to apply, Capote must show that Texas: (1) has a more significant relationship with the parties and the transaction at issue than New Jersey; (2) has a materially greater interest than New Jersey in the enforceability of the covenants; and (3) has a fundamental policy that would be contravened by the application of New Jersey law. *DeSantis*, 793 S.W.2d at 678.

In its letter brief, ADP fails to address the first or second elements of the test, arguing Texas's relationship and interest here are immaterial because no fundamental Texas policy would be contravened by applying New Jersey law. Capote responds that the Texas Supreme Court has explicitly held the enforcement of non-compete agreements is a matter of fundamental Texas policy, and further, contends Texas has a more significant relationship with the parties and greater interest in the enforceability of the RCA than does New Jersey.

A.   **More Significant Relationship**

The Court agrees that Texas has a more significant relationship with the parties and the transaction at issue than does New Jersey. In determining which state has the "more significant relationship," Texas courts examine "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Cardoni*, 805 F.3d at 582. These contacts are weighed by their quality, not their number. *Id.* (citing *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996)).

While one of these contacts favors New Jersey—again, ADP's principal place of business is New Jersey—the remainder favor Texas. The place of contracting was Texas, as Capote accepted

the terms of both RCAs while domiciled in Texas and working in one of ADP's Texas offices. *See* First Am. Compl. ¶¶ 15, 20, 27 (Capote moved to Texas in January 2011 and allegedly accepted the terms of the RCAs in March 2013 and September 2014). The RCAs' non-compete provisions prohibit Capote from accepting employment with any ADP competitor within the territory to which Capote was assigned and soliciting ADP employees or clients for twelve months and two years following his separation from ADP, respectively. *See* First RCA ¶¶ 1, 4; Second RCA ¶¶ 1(h), 3–5. Thus, as Capote was working in Texas and managing Texas territory during the last two years of his employment with ADP, Texas is the place of performance of both RCAs. Finally, as already noted, Capote was domiciled in Texas at the time of contracting, and although ADP has its principal place of business in New Jersey, ADP is incorporated in Delaware and has Texas offices. The Court concludes Texas has the most significant relationship with the RCAs and the parties, and Texas law would govern absent the choice-of-law provision.

The first § 187 factor thus favors application of Texas law.

**B.    Materially Greater Interest**

The Court also agrees with Capote that Texas has a materially greater interest than New Jersey in the question whether the RCAs' covenants are enforceable. Both the Texas Supreme Court's decision in *DeSantis v. Wackenhut Corp.* and the Fifth Circuit's recent decision in *Cardoni v. Prosperity Bank* support this conclusion. The *DeSantis* court found Texas law applied to the parties' non-compete agreement despite the presence of a Florida choice-of-law provision, reasoning that "[a]t stake . . . is whether a Texas resident can leave one Texas job" for employment with "a competing Texas business." 793 S.W.2d at 679, 681. Similarly, in *Cardoni*, the Fifth Circuit found Oklahoma—the state where the employees were located—had a materially greater interest than

Texas—the state where the employer was located—in the enforceability of the non-compete, non-solicitation, and non-disclosure covenants at issue. 805 F.3d at 584. Noting the case "implicate[d] essentially the same interests as *DeSantis*, with the difference that Texas is now on the opposite side of the equation[,]" the panel found Oklahoma had the materially greater interest in the parties' dispute. *Id.*

Here, as in *Cardoni*, this case involves the same interests that were at stake in *DeSantis*. Texas is "directly interested" in Capote "as an employee in this state," in ADP "as a national employer doing business in this state," and in the Texas customers served by ADP and its competitors. *See DeSantis*, 793 S.W.2d at 679. In contrast, New Jersey's "direct interest in the enforcement of the noncompetition agreement in this case is limited to protecting a national business headquartered in that state." *See id.* As such, "the circumstances of this case leave little doubt, if any, that Texas has a materially greater interest" than New Jersey in enforcement of the covenants contained in the RCAs. *See id.* The second § 187 factor also favors application of Texas law.

C. **Fundamental Policy**

Finally, although Texas has the more significant relationship with the parties and a materially greater interest in the covenants' enforceability, the parties' choice of New Jersey law must stand unless its application would contravene a fundamental Texas policy. *See Cardoni*, 805 F.3d at 585. While neither the authors of the Restatement nor the Texas courts have articulated a clear standard for determining whether a policy is "fundamental," both have noted the "application of the law of another state is not contrary to the fundamental policy of the forum merely because it leads to a different result than would obtain under the forum's law." *Id.* at 585 (quoting *DeSantis*, 793 S.W.2d at 680 (invoking RESTATEMENT § 187 cmt. g)). The "focus is on whether the law in question is a

part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction." *Id.* (quoting *DeSantis*, 793 S.W.2d at 680).

Capote makes no argument that application of New Jersey law to adjudicate ADP's claims concerning the RCAs' non-disclosure covenants would violate any fundamental Texas policy. As such, the Court finds the parties' choice of New Jersey law should govern those claims. As for the non-compete and non-solicitation covenants, however, Capote disputes the application of New Jersey law and contends Texas law should govern. The Court agrees with Capote.

Because the non-compete and non-solicitation covenants both fall within the Texas Supreme Court's definition of "covenants not to compete," *see Exxon Mobil Corp. v. Drennan*, 452 S.W.3d 319, 327 (Tex. 2014) (defining "covenants not to compete" as "[c]ovenants that place limits on former employees' professional mobility or restrict their solicitation of the former employer's customers and employees"), the Court analyzes them together. As Capote correctly observes, the Texas Supreme Court held in *DeSantis* "that the law governing enforcement of noncompetition agreements is fundamental policy in Texas, and that to apply the law of another state to determine the enforceability of such an agreement in the circumstances of a case like this would be contrary to that policy." *DeSantis*, 793 S.W.2d at 681. ADP, however, cites the Texas Supreme Court's decision in *Exxon Mobil Corp. v. Drennan* support of its contrary view.

In *Drennan*, a former Exxon employee sued Exxon to recover 57,200 outstanding restricted stock shares he received under two incentive compensation programs. 452 S.W.3d at 322–23. The program agreements permitted Exxon to terminate any outstanding stock awards if Drennan became

employed by an Exxon competitor. *Id.* at 322. Drennan subsequently left Exxon and accepted a position with an Exxon competitor. *Id.* at 323. Exxon cancelled Drennan's 57,200 outstanding shares, citing the program agreements. *Id.*

A threshold issue was whether Texas law or New York law, as per a choice-of-law provision in the program agreements, applied to the dispute. *Id.* at 325. In the first two steps of the § 187 analysis, the *Drennan* court concluded Texas had a more significant relationship to the parties and the transaction and a materially greater interest in the determination of whether the relevant provisions of the program agreements were enforceable. *Id.* at 326–27.

Crucially, in its analysis of the fundamental policy prong, the *Drennan* court began by holding that the provisions at issue were *not* covenants not to compete, but rather, were "[f]orfeiture provisions conditioned on loyalty[.]" *Id.* at 328. This fact, the court reasoned, distinguished *DeSantis* from the case before it, as "[f]orfeiture provisions conditioned on loyalty . . . do not restrict or prohibit the employees' future employment opportunities"—they "reward employees for continued employment and loyalty." *Id.* at 327–28. Additionally, the court pointed out that "[u]nder a non-compete, the former employer can bring a breach of contract suit to enforce the clause. But under a forfeiture provision, the former employer does not need to take legal action because the [incentive compensation] plan belongs to the employer." *Id.* at 328. The *Drennan* court therefore concluded the forfeiture provisions were "not like the provisions in . . . *DeSantis*." *Id.* at 329.

Having so found, the *Drennan* court turned back to the question whether application of New York law to the dispute would offend a fundamental Texas policy. The court explained it could "easily distinguish the current case from our holding in *DeSantis*" because, "[f]irst and most

importantly," Exxon's "Incentive Programs do not involve covenants not to compete." *Id.* at 329. The court then stated:

> Second, the policy concerns regarding uniformity of law raised in *DeSantis* have changed in the past twenty-four years. With Texas now hosting many of the world's largest corporations, our public policy has shifted from a patriarchal one in which we valued uniform treatment of Texas employees from one employer to the next above all else, to one in which we also value the ability of a company to maintain uniformity in its employment contracts across all employees . . . .

452 S.W.3d at 329–30 (citations omitted). The court concluded applying New York law to determine the enforceability of the forfeiture provisions would not contravene any fundamental Texas policy. However, the court again carefully qualified that holding:

> We recognize that other jurisdictions have held, as we did in *DeSantis*, that the application of another state's law which results in the enforcement of a non-competition agreement contravenes the forum state's fundamental public policy. *However, once again, it should be noted that this case does not involve a covenant not to compete.*

*Id.* at 331 n.7 (emphasis added) (string citation omitted).

This case involves a covenant not to compete, not a forfeiture provision, and is therefore markedly different from *Drennan*. The Court cannot agree with ADP's implication that *Drennan* signaled a sea change in Texas's policy concerning non-compete provisions, as *Drennan* dealt with forfeiture provisions, not covenants not to compete. The *Drennan* court noted Texas "also value[s] . . . uniformity in employment contracts across all employees" only after distinguishing the case from *DeSantis* on, "most importantly," the ground *Drennan* did not involve a covenant not to compete— then reiterated that distinction. Further, ADP fails to cite to, and the Court's research has not uncovered, any case finding application of a foreign state's law to a non-compete provision does not offend a fundamental Texas policy. Given the Texas Supreme Court's repeated signaling that

*Drennan* is limited to its facts, the absence of any case applying *Drennan* to a covenant not to compete, and the fact that "virtually every court that has addressed the question of whether enforcement of noncompetition agreements is a matter of fundamental or important state policy [has] answer[ed] affirmatively[,]" see *DeSantis*, 793 S.W.2d 680–81, the Court declines to break new ground by articulating a shift in fundamental Texas policy permitting the application of a foreign state's law under these circumstances.

As such, the third factor of the § 187 analysis also favors application of Texas law to ADP's claims regarding the non-compete and non-solicitation provisions of the RCAs.

## Conclusion

Texas has both a more significant relationship to the parties and the transaction and a materially greater interest in the enforceability of the covenants in the RCAs than does New Jersey. Because Capote does not argue application of New Jersey law to resolve the claims concerning the RCAs' non-disclosure provisions would contravene a fundamental Texas policy, the Court finds the parties' choice of New Jersey law governs those claims. Texas law applies, however, to the claims concerning the RCAs' covenants not to compete, as the law governing same "is fundamental policy in Texas" and application of New Jersey law "would be contrary to that policy." *DeSantis*, 793 S.W.2d at 681.

IT IS SO ORDERED.

SIGNED this the 7th day of July 2016.

*Bamsparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE